```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF MASSACHUSETTS


JOANNE B. BROOKS, as            )
Administratrix of the Estate of )
Jason Michael Houran,           )
        Plaintiff               )
                                )
              v.                 ) No. 08-cv-30233-MAP
                                )
SPECIALTY MINERALS, INC.,       )
MINERALS TECHNOLOGIES, INC.,    )
BEMIS LINE CONSTRUCTION         )
COMPANY, INC., BEMIS            )
ENTERPRISES, INC., BEMIS, LLC,  )
and HAWKEYE, LLC,               )
        Defendants              )
```

MEMORANDUM AND ORDER REGARDING
DEFENDANTS BEMIS ENTERPRISES, INC. AND BEMIS LINE
CONSTRUCTION COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT,
BEMIS, LLC AND HAWKEYE, LLC'S MOTION FOR SUMMARY JUDGMENT,
AND BEMIS, LLC AND HAWKEYE, LLC'S
CROSS-MOTION FOR SUMMARY JUDGMENT
(Dkt. Nos. 60, 66, & 80)

February 10, 2011

PONSOR, D.J.

I. INTRODUCTION

Plaintiff Joanne Brooks is the administratrix of the estate of her son, Jason Michael Houran. Plaintiff filed a complaint in December 2008, alleging wrongful death and negligence; wrongful death and malicious, wilful, wanton, reckless, or grossly negligent conduct; conscious pain and suffering; and strict liability. (Dkt. No. 1.) On February

2, 2010, for reasons that will become clear, Plaintiff filed an amended complaint to further clarify the defendants (Dkt. No. 41, Am. Compl.). Defendants filed crossclaims for indemnity and contribution against each other, the specifics of which are not relevant to the proceeding currently before the court. (Dkt. Nos. 44, 45, 46, 47, 48, 50, 51, 52, 54, 55, 56, & 57.)

The amended complaint lists as Defendants: Specialty Minerals, Inc. (Counts I-IV); Minerals Technologies, Inc. (Counts V-VIII); Bemis Line Construction Company, Inc. and/or Bemis Enterprises (IX-XII); Bemis, LLC (Counts XIII-XVI); and Hawkeye Group, LLC (Counts XVII-XX).

Before the court are a motion for summary judgment by Defendants Bemis Enterprises and Bemis Line Construction (Dkt. No. 60) and a motion for summary judgment by Defendants Bemis, LLC and Hawkeye, LLC (Dkt. No. 66). Prior to oral argument, the court was informed that the cross-motion for summary judgment by Defendants Bemis, LLC and Hawkeye, LLC (Dkt. No. 80) was no longer at issue. The court will accordingly deny it as moot. Additionally, Plaintiff has withdrawn her claims against Defendant Hawkeye, LLC (Counts XVII-XX) and her claims of strict liability against all parties (Counts IV, VIII, XII, XVI, XX). As such, the court will dismiss Counts IV, VIII, XII,

XVI, XVII, XVIII, XIX, and XX

## II. BACKGROUND

Under the familiar summary judgment standard, the facts are recited in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor. Klaucke v. Daly, 595 F.3d 20, 24 (1st Cir. 2010).

A. The Accident.

Specialty Minerals, Inc. ("SMI") is the owner and operator of a limestone mine in Adams, Massachusetts ("Adams mine"). Jason Michael Houran, the decedent, was a laborer who worked for a company called Adams Trucking, which performed maintenance and clean-up work at the mine. On July 27, 2006, Houran was using a weed-whacker in an area of the mine called Substation 15 when he cut through a guy wire attached to a utility pole ("Pole 7") and was fatally electrocuted. Houran was survived by his mother (Plaintiff) and his son, who was four years old at the time.

B. Cause of Death.

Plaintiff's liability expert, Dr. J. Duncan Glover, opined that the electrocution occurred because the "guy strain insulator" that covered a portion of the guy wire that connected Pole 7 to the ground was "not long enough to

prevent the guy itself from coming into contact with the conductors and becoming energized." (Dkt. No. 79, Ex. 7, Glover Rep. at 2.) Dr. Glover further opined that the electrocution would not have occurred if the guy wire had been properly insulated. (Id.)

A bird's-eye-view photograph of Pole 7 shows two transformers connected to the pole with a transformer primary wire, also called a conductor, running between them. (Dkt. No. 64, Ex. 9.) The guy wire runs from the ground, past this transformer primary wire, and connects above the transformers to Pole 7 at a location not in view in the photograph. The photograph shows that a portion of the guy wire was covered with insulation. The insulation did not reach to the portion of the guy wire that was located near the transformer primary wire. Accordingly, when Mr. Houran severed the guy wire with the weed-whacker, the wire sagged, and an uninsulated part of the guy wire came into contact with the conductor. (Dkt. No. 79, Ex. 7, Glover Rep. at 2.) The result was Mr. Houran's electrocution and subsequent death.

C. Pole 7.

Located at Substation 15 is a pump house that powered a pump that discharged water out of the limestone quarry. The electricity was delivered to the pump via high voltage power lines that ended at Pole 7 at the pump house. Pole 7 held three transformers and was kept in place with a guy wire that attached from Pole 7 to an anchor in the ground. It is this wire that Houran hit with his weed-whacker.

Defendant SMI hired Defendant Bemis Line Construction to install power lines in 1998, including Pole 7. Defendant Bemis Line Construction had completed this installation by January 1, 1999.

Four and a half years later, on June 27, 2003, Defendant SMI hired Defendant Bemis Line Construction to install electrical power service to a new quarry pump at the existing pump house at Substation 15. In December 2004, Defendant SMI hired Defendant Bemis Line Construction to investigate a power outage that seemed to have occurred as a result of a lightening strike at Substation 15. In its investigation, Defendant Bemis Line Construction determined that the transformers on Pole 7 needed to be replaced. On January 28, 2005, Defendant Bemis Line Construction replaced the transformers on Pole 7 with identical transformers in the same locations as those that it had originally installed in 1998.

D.  <u>The Bemis Companies</u>.

Organized in Vermont on January 25, 1984, by its president, Rodney Bemis, Defendant Bemis Line Construction was a family electrical business whose work consisted primarily of setting up high voltage utility poles and wires in rural areas.  (Dkt. No. 74, Ex. 3, Bemis Aff. ¶ 6.)  Most of the company's work was for utility companies, but it was occasionally hired by private companies like SMI.  (<u>Id.</u> ¶ 7.)

Defendant Bemis, LLC was organized on April 7, 2006, two months prior to the accident and more than one year after Bemis Line Construction did any work at Substation 15.  (Dkt. No. 74, Ex. 4.)  Bemis, LLC is a subsidiary of Hawkeye Holdings, LLC, which is located in New York.  On April 14, 2006, Rodney Bemis entered into a Purchase Asset Agreement with Defendant Bemis, LLC.  (Dkt. No. 74, Ex. 3, Bemis Aff. ¶ 4.)  As part of the transaction, the name of Bemis Line Construction was changed to Bemis Enterprises, Inc.  (<u>Id.</u> ¶ 5.)  Rodney Bemis has continued to work as an electrical utility contractor with Bemis, LLC.  (<u>Id.</u> ¶ 6.)

## III. <u>DISCUSSION</u>

A. <u>Legal Standard</u>.

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. The burden then shifts to the opposing party who must demonstrate that a reasonable jury could return a verdict in its favor based on the evidence. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). "A party opposing summary judgment must present definite, competent evidence to rebut the motion." <u>Torres v. E.I. Dupont De Nemours & Co.</u>, 219 F.3d 13, 18 (1st Cir. 2000) (citations omitted).

B. <u>Motion for Summary Judgment by Defendant Bemis Line Construction/Bemis Enterprises (Dkt. No. 60)</u>.

Defendants Bemis Line Construction and Bemis Enterprises ("Defendant Bemis") have moved together for summary judgment on the counts against them on the grounds that Massachusetts' statute of repose bars Plaintiff's claims. Plaintiff, Defendants SMI and MTI, and Defendant Bemis, LLC, have opposed the motion. (Dkt. Nos. 69, 72, & 77.)

Massachusetts General Laws ch. 260, section 2B, requires in relevant part that an action in tort for damages

"arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property" shall commence no later than six years after "substantial completion of the improvement." Mass. Gen. Laws ch. 260, § 2B. "Simply put, after six years, the statute completely eliminates a cause of action against certain persons in the construction industry." Klein v. Catalano, 437 N.E.2d 514, 516 (Mass. 1982). Defendant Bemis argues that its installation of the power lines at Substation 15 in 1998 was an improvement and that Plaintiff's 2008 claims arise out of that installation and thus are time-barred. Plaintiff and co-Defendants assert in response that the installation was not an improvement and, alternatively, that the claims arise out of Defendant Bemis's subsequent work on Pole 7 at Substation 15 in 2005.

    1. Improvement.

The law appears clear that Defendant Bemis's original installation was an improvement. See Parent v. Stone & Webster Eng'g Corp., 556 N.E.2d 1009, 1011 (Mass. 1990) (An improvement is "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."). Notwithstanding

Plaintiff's argument that the attaching of a guy wire to a utility pole does not constitute an improvement, Defendant Bemis clearly falls into the class of protected actors who "perform acts of 'individual expertise' . . . who render particularized services for the design and construction of particular improvements to particular pieces of real property" as opposed to the class of unprotected actors who are "mere suppliers of standardized products." Dighton v. Fed. Pac. Elec. Co., 506 N.E.2d 509, 515 (Mass. 1987). See also Snow v. Harnischfeger Corp., 12 F.3d 1154, 1159 (1st Cir. 1993) (quoting Mass. Gen. Laws ch. 260, §2B) ("The purpose of the statute is 'to protect providers of individual expertise' who 'render particularized services for the design and construction of particular improvements to particular pieces of real property.'").

  2. <u>Defendant Bemis's Subsequent Work on Pole 7</u>.

  That said, it appears equally clear that Defendant Bemis's subsequent work at Substation 15 reset the clock on the statute of repose to 2005, bringing Plaintiff's claims well within the six-year period and compelling denial of Defendant Bemis's motion for summary judgment.

  On January 25, 2005, an employee of Defendant Bemis "complete[d] the installation of new replacement transformers at Substation 15." (Dkt. No. 62, Def. Bemis

9

Statement of Material Facts, ¶ 15.) The installation included:

> wir[ing] the new replacement transformers to each other using the existing tap connectors that Bemis had originally installed. The length of these tap connectors was not changed. [The employee] reattached these tap connectors to the new transformers such that the tap connectors were in the same position relative to the other component parts of Substation 15 as they were at the time of Bemis's original installation.

(Id. ¶ 17.)

At the motion hearing, Defendant Bemis's attorney explained that the replacement of the transformers required the primary transformer wires to be disconnected and then reconnected after the installation of the new transformers. Similarly, John David Buttelman, an employee of Defendant SMI, testified about the replacement that, "[w]hen I look at maintenance and repair -- and I'm not the expert here. But, typically, it's not just the transformers. It's the wires associated with it." (Dkt. No. 71, Ex. 2, Buttelman Dep., 102:19-23.)

The proper, or improper, re-attachment of the primary transformer wire lies at the heart of Plaintiff's claim. The birds'-eye photograph makes heartbreakingly clear that, had this wire, or conductor, been pulled more taut, it would have been high enough that, when the guy wire sagged, the

uninsulated portion would likely not have come into contact with the conductor. Similarly, had just a few inches of insulation been added to the guy wire, it would have been an insulated portion of the guy wire that came into contact with the conductor.

Notwithstanding Defendant Bemis's assertion that it is undisputed that it did no "work whatsoever to the guy wire, guy insulator, guy anchor, or utility pole at Substation 15," (Dkt. No. 61, Def. Mem. at 2), it is also undisputed that Defendant Bemis's 2005 replacement of the transformers on Pole 7 included the reattachment of the wire that played a major role in the electrocution of the decedent. (See Dkt. No. 79, Ex. 7, Glover Rep. at 2 ("When the guy was severed, it sagged, coming in contact with the overhead energized conductors attached to the pole mounted transformers.").)

I. General Administration or Repair?

Defendant Bemis contends that even if its subsequent work involved Pole 7, this work did not trigger a new six-year period because it was not an improvement but was instead "ordinary repairs" on the installation that had been substantially completed in 1998. Parent v. Stone & Webster Eng'g Corp., 556 N.E.2d 1009, 1011 (Mass. 1990).

Massachusetts courts have held that Mass. Gen. Laws ch. 260, § 2B, protects the original installer from liability arising out of ordinary repairs or what the statute calls "general administration." As described by the state appeals court, "general administration" is "uninterrupted, post-construction professional activities which the defendant performed in an effort to remedy unsatisfactory conditions that were revealed postconstruction." Coca-Cola Bottling Co. v. Weston & Sampson Eng'rs, 695 N.E.2d 688, 693 (Mass. App. Ct. 1998). However, the statute's protection has obvious limits:

> [t]he plumber who negligently repairs a plugged soil line long after the last punch list was satisfied and all professionals paid and released is not engaged in the 'general administration of an improvement to real property' within the meaning of the statute, and he will not have available the protection of the repose aspect of § 2B.

Id. at 694 (quoting Mass. Gen. Laws ch. 260, § 2B). Here, where the initial project was indisputably completed in December 1998, and Defendant Bemis was not called back to Pole 7 for four years, the statute of repose offers no protection. This conclusion is supported by the fact that

12

Defendant Bemis did not return to Pole 7 to do ordinary repairs but to repair a power outage caused by a lightening strike.

    ii. <u>Continued Negligence</u>.

Defendant Bemis further contends that it is relieved of liability because any subsequent work that it performed on Pole 7 in 2005 did not substantially change the original installation. Specifically, it reattached the same conductors to the same tap connectors. Despite extensive questioning at the hearing, however, Defendant Bemis was unable to provide any support, nor has the court uncovered any, for its dubious theory that the six-year statute of repose protects an original installer from liability for subsequent negligent installation solely because the original installation was also negligent.

Similarly unavailing is Defendant Bemis's argument that even if the court finds that the 2005 work reset the repose clock, Plaintiff has provided no causal connection between its 2005 allegedly negligent conduct and the accident. In fact, Plaintiff's liability expert opined that Defendant Bemis had a duty to inspect the guy wire when it was on location in 2005 and that such an inspection would have

resulted in maintenance that would have prevented the accident. (Dkt. No. 79, Ex. 7, Glover Rep. at 2.)

iii. Plaintiff's "Failure to" Theories.

Plaintiff's theories of liability include allegations that Defendant Bemis failed to inspect Pole 7, failed to remedy known dangers, and failed to warn of known dangers. (Dkt. No. 41, Compl. ¶¶ 38, 52, 57.) Defendant Bemis argues that all of these theories arise out of the original installation and thus are time-barred. While it is true that certain allegations in the complaint refer specifically to the 1998 installation (see, e.g., id. ¶¶ 34, 35), the majority of the allegations refer to general conduct before July 27, 2006. For example, the primary allegation in Count IX, Wrongful Death and Negligence, concerns Defendant Bemis's failure "to exercise reasonable care in failing to inspect, monitor, and/or ensure that Substation 15 and its component parts thereto were properly installed and/or repaired." (Id. ¶ 87.) This allegation clearly includes 2005 conduct that is not time-barred.

For all of these reasons, the court finds that Defendant Bemis's subsequent work at Pole 7 in 2005 reset the repose clock, and, accordingly, the court will deny Defendant Bemis's motion for summary judgment (Dkt. No. 60).

C. Motion for Summary Judgment by Defendant Bemis,

14

LLC.[1]

Defendant Bemis, LLC has moved for summary judgment on Counts XIII-XV (Count XVI, strict liability, having been dismissed) of the first amended complaint on the grounds that it is undisputed that Defendant Bemis, LLC never worked at Substation 15. Furthermore, because the Asset Purchase Agreement ("Agreement") between Defendants Bemis Line Construction and Bemis, LLC provided only for the purchase and sale of assets, successor liability cannot properly be imposed.

"The corporate law doctrine of 'successor liability' comprises a set of exceptions to the general rule that a corporation purchasing the assets of another is not liable for the debts of the seller corporation." Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1447 (1st Cir. 1995) (emphasis in original). Massachusetts recognizes four sets of circumstances under which successor liability may be imposed:

> 1) the successor expressly or impliedly assumes the liability of the predecessor, (2) the transaction is a de facto merger or consolidation, (3) the successor is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor.

---

[1] Because Defendant Hawkeye, LLC is no longer a party to this action, the court will discuss this motion for summary judgment only as it relates to Defendant Bemis, LLC.

*Cargill, Inc. v Beaver Coal & Oil Co.*, 676 N.E.2d 815, 817 (Mass. 1997). Although Plaintiff makes a colorable argument that the arrangement between Defendants Bemis Line Construction and Bemis, LLC was a *de facto* merger, Plaintiff is unable to surmount two significant hurdles that preclude the court from imposing successor liability against Defendant Bemis, LLC.

First, Bemis Line Construction is still in existence under the name Bemis Enterprises, and "whatever the reach of successor liability under the law of Massachusetts, the doctrine has no applicability where, as here, the original manufacturer remains in existence to respond in tort for its alleged negligence." *Roy v. Bolens Corp.*, 629 F. Supp. 1070, 1073 (D. Mass. 1986). Second, the Agreement between Defendants Bemis Line Construction and Bemis, LLC, dated April 14, 2006, included a provision in which Bemis, LLC expressly rejected any imposition of liability:

> 2.2 Liabilities. Buyer shall not assume or become liable or obligated, whether under any contract or agreement of Seller or otherwise for any of Seller's obligations, Liabilities or indebtedness whatsoever, whether known or unknown. . . . Without limiting the generality of the indemnification obligations set forth in Article VIII, Seller and the Stockholder shall be solely responsible for satisfying all of the Liabilities and Buyer shall have no liability or responsibility whatsoever

>     with respect thereto.

(Dkt. No. 67, Ex. 1, ¶ 2.2.)

Plaintiff's argument that the indemnification obligations set forth in Article VIII of the contract somehow negate this provision have no merit because they are expressly included in the liability provision.  Also without merit is Plaintiff's argument that the contract's requirement that the seller buy liability insurance for the buyer suggests an implied assumption of liability.  The contract required that the insurance only cover the buyer through the closing on April 16, 2006.  (Dkt. No. 80, Ex. 1, ¶ 7.6.)

Plaintiff has provided no case law, nor has this court found any, in which successor liability was imposed despite an express contract provision to the contrary.  Accordingly, Defendant Bemis, LLC's motion for summary judgment on all counts against it will be allowed (Dkt. No. 66).

## IV. CONCLUSION

For the foregoing reasons, the motion for summary judgment by Defendants Bemis Enterprises and Bemis Line Construction (Dkt. No. 60) is hereby DENIED.  The motion for summary judgment by Bemis, LLC and Hawkeye, LLC (Dkt. No. 66) is hereby ALLOWED.  The cross-motion for summary judgment by Defendants Bemis, LLC and Hawkeye, LLC (Dkt. No.

80) is hereby DENIED AS MOOT. Counts IV, VIII, XII, XVI, XVIII, XIX, and XX of the amended complaint (Dkt. No. 41) are DISMISSED by agreement of the parties. The case will proceed against Defendants Specialty Minerals, Inc., Minerals Technology, Inc., and Bemis Line Construction/Bemis Enterprises on Counts I, II, III, V, VI, VII, IX, X, and XI of the amended complaint (Dkt. No. 41).

The clerk will issue an order setting the case for final pretrial conference to take place on March 10, 2011, at 3:00 p.m. Trial will commence on April 25, 2011, or within thirty days thereafter, depending on the court's trial schedule.

It is So Ordered.

/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U.S. District Judge